1
2
3
4
5
6                  IN THE UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF ARIZONA

8

9   United States of America,              )   CR 97-0237-PHX-ROS
                                           )
10             Plaintiff-Respondent        )   CV 04-0466-PHX-ROS (ECV)
                                           )
11   vs.                                   )
                                           )   **REPORT AND RECOMMENDATION**
12                                         )
    Micah Rudisill,                        )
13                                         )
               Defendant-Movant.           )
14                                         )
15  _____      )

16  TO THE HONORABLE ROSLYN O. SILVER, UNITED STATES DISTRICT JUDGE:

17                          **BACKGROUND**

18         Micah Rudisill ("Movant"), has filed a *pro se* Amended Motion to Vacate, Set Aside

19  or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 (Doc.

20  #1244) with a supporting memorandum. On November 12, 1998, a jury found Movant guilty

21  of one count of conspiracy, fifteen counts of mail fraud, thirteen counts of wire fraud, eleven

22  counts of money laundering and one count of conspiracy to commit money laundering. (Doc.

23  #834).   On August 6, 1999, the court sentenced Movant to a term of 210 months

24  imprisonment and three years of supervised release. Id.  The court also ordered Movant to

25  pay restitution of approximately $8.7 million. Id.  Movant filed a direct appeal and the Ninth

26  Circuit Court of Appeals affirmed the convictions and sentence on July 12, 2002 in a

27  published opinion. United States v. Johnson, 297 F.3d 845 (9th Cir. 2002).  Movant then filed

28

1    a petition for writ of certiorari, which was denied on March 3, 2003.  Johnson v. United
2    States, 537 U.S. 1242 (2003).

3           Movant alleges four grounds for relief in his amended motion.  First, he alleges that
4    Count 38 of the superseding indictment, which alleges conspiracy to commit money
5    laundering, is flawed in that it fails to charge a cognizable offense.  Second, Movant alleges
6    that the trial court failed to give a jury instruction requiring a unanimous verdict on a specific
7    theory of liability.  Third, Movant alleges that his appellate counsel provided ineffective
8    assistance by failing to challenge the sufficiency of the evidence to support the money
9    laundering counts and the charge of conspiracy to commit money laundering.  Fourth,
10   Movant alleges that his sentence was imposed in violation Blakely v. Washington, 542 U.S.
11   296 (2004).  Respondent filed a Response to Defendant's Motion (Doc. #1228) on June 22,
12   2004, after which Movant filed a Traverse (Doc. #1234) on July 13, 2004.  Respondents then
13   filed a Supplemental Response (Doc. #1246) after this court granted Movant's motion to
14   amend to add a Blakely claim.  Movant filed a second Traverse (Doc. #1251) on November
15   4, 2004.

16          The facts at trial established that Movant and co-defendant Larry Eames developed
17   a fraudulent telemarketing scheme for American Eagle Enterprises (AEA).  Movant and
18   Eames were managers at AEA, a telemarketing business that initially sold pens, coffee mugs
19   and other advertising specialty items.  Movant and Eames determined that they could make
20   more money by soliciting targeted individuals.  They developed a scheme in which AEA
21   telemarketers falsely represented to the victims, nearly all of whom were elderly, that they
22   had won valuable prizes and money.  The telemarketers told the victims that they could
23   collect their prizes, which did not exist, by purchasing advertising specialty items.  Because
24   the items were worth only a small fraction of the sale price, AEA realized large profits on
25   these transactions.  Once an individual made a purchase, the telemarketers would continue
26   to call these individuals and encourage them to make additional purchases even though the
27   valuable prizes they were told about never materialized.  As a result of the scheme, AEA
28

1 took in more than 10 million dollars from more than 300 elderly victims between January
2 1996 and June 1997.[1]
3 **DISCUSSION**
4 **A.    Ground One**
5       Movant alleges in Ground One that Count 38 of the superseding indictment fails to
6 charge a cognizable offense and therefore the conviction and sentence pertaining to that
7 count are illegal.  Movant contends that a charge of conspiracy to commit money laundering
8 under 18 U.S.C. § 1956(h) requires the government to allege a conspiracy to conduct a
9 specific financial transaction involving the proceeds of an unlawful activity.   Movant
10 contends that because the money laundering statute in § 1956(a)(1) requires proof of a
11 "financial transaction" involving the proceeds of an unlawful activity, a conspiracy charge
12 must allege the same element.  Movant claims that Count 38 is flawed because it alleges a
13 conspiracy to commit a course of conduct rather than a specific financial transaction.
14       An indictment charging a violation of the money laundering conspiracy statute does
15 not have to allege an overt act.  United States v. Tam, 240 F.3d 797, 802 (9th Cir. 2001).
16 "The language of 18 U.S.C. § 1956(h) is nearly identical to the language of 21 U.S.C. § 846,
17 which the Supreme Court held in United States v. Shabani, 513 U.S. 10, 15, 115 S.Ct. 382,
18 130 L.Ed.2d 225 (1994), does not require proof of an overt act." Id.  Thus, Movant's
19 contention that the conspiracy count must allege that he conducted a specific financial
20 transaction is without merit.  Movant's argument and authority pertain to the underlying
21 offense of money laundering and he fails to recognize the difference in the elements of a
22 conspiracy charge.
23       Regardless, in this case the conspiracy charge contains several specific financial
24 transactions that Movant conspired to conduct.  Count 38 alleges that Movant and the other
25 defendants agreed to use the proceeds of their mail and wire fraud activities to pay expenses
26

27       [1] A lengthier and more detailed description of the facts is provided in the Ninth
Circuit's decision on direct review.  See U.S. v. Johnson, 297 F.3d 845, 852-54 (9th Cir.
28 2002).  For purposes of this recommendation, a short summary is sufficient.

1   and otherwise promote their ongoing fraudulent business.  It further alleges eleven specific

2   financial transactions that were conducted in furtherance of the conspiracy, including

3   payments from AEA accounts to delivery services and the phone company among other

4   recipients.  Thus, contrary to Movant's claim, the government alleged specific financial

5   transactions as objects of the conspiracy.  If Movant is claiming that the government was

6   required to allege eleven separate conspiracy counts for each of the identified financial

7   transactions, he has presented no authority to support such a claim and the court is aware of

8   no such authority.  Based on the arguments presented and the court's reading of the

9   superseding indictment, Count 38 alleges sufficient facts to support the charge of conspiracy

10  to commit money laundering under 18 U.S.C. § 1956(h).  Moreover, it is important to note

11  that Movant does not contend the alleged deficiency left him unaware of the charge or unable

12  to prepare a defense to that count.  For these reasons, the court will recommend that Movant's

13  allegations in Ground One be denied.

14  **B.    Ground Two**

15         Movant alleges in Ground Two that the trial court failed to require a unanimous

16  verdict as to which theory of liability the jury relied on to convict Movant.  Movant argues

17  that under the instructions provided, the jury had the option to find Movant criminally liable

18  as a principal, an aider and abettor, or a co-conspirator.  Although the trial court gave several

19  instructions indicating that a unanimous verdict was required, Movant claims that the court

20  erred by failing to instruct the jury that it must be unanimous as to the theory of liability it

21  was relying on for each guilty verdict.  As a result, Movant contends that the guilty verdicts

22  against him may not have been unanimous with respect to the theory of liability.  Movant

23  claims that the court's instructions were "constitutionally erroneous," though he fails to allege

24  which provision of the Constitution was violated.

25         Movant cites no authority for the proposition that when a jury is presented with

26  alternative theories of liability as a principal, an aider and abettor, or a co-conspirator, it must

27  be instructed that unanimous agreement on a theory is required.  Supreme Court and Ninth

28  Circuit authority support a contrary conclusion.  Interpreting the Supreme Court's decision

1  in <u>Schad v. Arizona</u>, 501 U.S. 624 (1991), the Ninth Circuit has ruled that "jurors are not

2  constitutionally required to unanimously agree on alternative theories of criminal liability."

3  <u>United States v. Kim</u>, 196 F.3d 1079, 1083 (9th Cir. 1999).   The court rejected Kim's

4  argument that a specific unanimity instruction was required because some jurors may have

5  believed he committed certain acts constituting the charged offenses while others may have

6  believed he aided the commission of the crime.  <u>Id.</u>  Kim further argued that the aiding and

7  abetting statute at 18 U.S.C. § 2 includes several acts of assisting, any one of which the jury

8  could have relied on in finding him guilty.  <u>Id.</u>  Applying <u>Schad</u>, the court held that "it was

9  not necessary for the jurors in this case to unanimously agree on a specific classification of

10  Kim's conduct."  <u>Id.</u>

11       The Supreme Court in <u>Schad</u> addressed whether it was unconstitutional for the State

12  of Arizona to require only a general verdict of first-degree murder based on premeditation

13  or felony murder without requiring jury unanimity as to which theory applied.  <u>Schad</u>, 501

14  U.S. at 624.  The Court affirmed the petitioner's conviction and held that a general verdict

15  under such circumstances was constitutional.  <u>Id.</u>  A plurality of the Court reasoned that the

16  alternative theories of first-degree murder are "an immaterial difference as to mere means"

17  and not "a material difference requiring separate theories of crime to be treated as separate

18  offenses subject to separate jury findings...."  <u>Id.</u> at 633.  Similarly, the Supreme Court held

19  in <u>Turner v. United States</u>, 396 U.S. 398, 420 (1970), that "when a jury returns a guilty

20  verdict on an indictment charging several acts in the conjunctive, as Turner's indictment did,

21  the verdict stands if the evidence is sufficient with respect to any one of the acts charged."

22       In a recent case from the Eastern District of New York, the jury was provided

23  instructions on the same three theories of liability at issue here.  <u>U.S. v. Lugo</u>, 2005 WL

24  1412137, at *3 (E.D.N.Y. June 15, 2005).  The court in this murder case, where the facts

25  failed to clearly establish which of two defendants was the shooter, instructed the jury on

26  liability as a principal, an aider and abettor, and as a co-conspirator.  <u>Id.</u>  Although the court

27  instructed the jury that its verdict must be unanimous, it did not instruct the jury that it must

28  agree on a single theory of liability.  <u>Id.</u>  In rejecting the defendant's argument that the failure

1 to so instruct the jury was an error, the court concluded, "There is simply no requirement that

2 the jury agree on a single mode of commission when a single crime can be committed in

3 various ways." Id. (citing Schad and Griffin v. United States, 502 U.S. 46 (1991)).

4      Movant has failed to establish that the trial court erred by failing to instruct the jury

5 that it must unanimously agree on which theory of liability it applied to each count to find

6 Movant guilty.  As the foregoing authority shows, such an instruction is not constitutionally

7 required.  The court will therefore recommend that this claim be denied.

8      Also in Ground Two, Movant alleges that he received ineffective assistance of counsel

9 because his lawyer failed to request an instruction requiring unanimity as to the theory of

10 liability, request a special verdict form indicating such unanimity, and raise this issue on

11 direct appeal.  The two-prong test for establishing ineffective assistance of counsel was set

12 forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on

13 an ineffective assistance claim, a convicted defendant must show (1) that counsel's

14 representation fell below an objective standard of reasonableness, and (2) that there is a

15 reasonable probability that, but for counsel's unprofessional errors, the result of the

16 proceeding would have been different.  Strickland, 466 U.S. at 687-88.  There is a strong

17 presumption that counsel's conduct falls within the wide range of reasonable assistance.

18 Strickland, 466 U.S. at 689-90.

19      In light of the authority cited above regarding jury unanimity for a specific theory of

20 liability, the court cannot say that counsel's failure to request an instruction, seek a special

21 verdict form, or raise this issue on direct appeal constitutes deficient performance.  In any

22 event, Movant does not even argue that there is any basis to believe the result of the

23 proceeding would have been different but for these alleged errors.  Given the extensive

24 evidence showing Movant's role as one of the organizers and leaders of this fraudulent

25 scheme, there is no basis to believe that the jury would have rendered different verdicts if

26 counsel had requested and the trial court had given a special unanimity instruction.

27 Accordingly, the court will recommend that Movant's claim of ineffective assistance of

28 counsel in Ground Two be denied.

**C.    Ground Three**

Movant alleges in Ground Three that his appellate counsel was ineffective for failing to challenge the sufficiency of the evidence on the money laundering convictions.  Movant claims that there was no evidence showing he conducted any of the financial transactions that were the subject of the money laundering counts.  Movant's trial counsel argued insufficient evidence of money laundering in a Rule 29 motion for judgment of acquittal but the trial court denied the motion.  Doc. #610, #631.

Although Movant did not challenge the money laundering convictions on direct appeal, some of the telemarketer co-defendants challenged whether sufficient evidence supported their convictions for conspiracy to commit money laundering.  <u>Johnson</u>, 297 F.3d at 868-70.  In affirming those convictions, the Ninth Circuit stated:

> The government established, with evidence fully admissible against [the telemarketers] that Rashada and Rudisill were engaged in conspiracies to commit fraud and promotional money laundering.  The testimony of Rashada, Simone, and the various testifying victims showed that Rashada and Rudisill agreed to telemarket ad specialty products to elderly consumers made up to look like businesses.  They expressly agreed to use the proceeds of their sales to fund the operation.
>
> * * *
>
> All funds taken in from this scheme were in the form of checks.  These checks were directed to Phoenix, where Rudisill and Rashada intended they be cashed and used to pay the bills for the Atlanta operation – including Atlanta's payroll.  Collectively, this evidence established that Rashada and Rudisill were engaged in both a conspiracy to fraudulently induce people to mail in money, and a conspiracy to engage in financial transactions (check cashing) with the proceeds of the fraud to fund additional fraud.  <u>Johnson</u>, 297 F.3d at 868-69.

In another part of the Ninth Circuit opinion addressing Movant's severance claim and the impact of a co-conspirator's statement, the court summarized the evidence as follows:

> [T]his vague testimony constituted but one minor piece of evidence in the course of a 17-week trial in which the government presented significant proof of Rudisill's guilt, including testimonial and documentary evidence showing that Rudisill helped originate the idea to sell to individuals, trained the sales staff in Atlanta how to reload customers, drafted the fraudulent front pitch, reviewed all the sales orders coming out of Atlanta and transferred funds to and from the Phoenix office to fund the operation in Atlanta.  <u>Johnson</u>, 297 F.3d at 856.

Although the court was not directly addressing the sufficiency of the evidence to support Movant's money laundering convictions, the Ninth Circuit opinion clearly shows that

1  the court viewed the evidence as more than adequate to support Movant's convictions.  A

2  claim of insufficient evidence of money laundering by Movant's appellate counsel would

3  have been futile.  Movant has not shown that the failure to raise such a claim was deficient

4  performance by the attorney.  Further, Movant does not even allege that but for appellate

5  counsel's alleged errors, the result of the proceedings would have different.  For these

6  reasons, the court will recommend that Ground Three be denied.

7  **D.    Ground Four**

8          Movant alleges in Ground Four that the facts relied on to support the sentencing

9  enhancements imposed against him were not determined by the jury.  Movant alleges that the

10  trial court imposed the sentencing enhancements based on the court's own factual findings.

11  Movant contends therefore that his sentence was imposed in violation of the rule announced

12  in Blakely v. Washington, 542 U.S. 296 (2004).

13          The Ninth Circuit recently held that the new rule announced in Blakely "does not

14  apply retroactively to a conviction that was final before that decision was announced."

15  Schardt v. Payne, 2005 WL 1593468, at *11 (9th Cir. July 8, 2005).  The same court had

16  previously recognized that the Supreme Court has not made Blakely retroactive to cases on

17  collateral review.  Cook v. United States, 386 F.3d 949, 950 (9th Cir. 2004).  The Ninth

18  Circuit's decision is consistent with other federal circuits.  See, e.g., United States v. Price,

19  400 F.3d 844, 849 (10th Cir. 2005) ("[W]e hold that Blakely does not apply retroactively to

20  convictions that were already final at the time the Court decided Blakely, June 24, 2004.");

21  United States v. Green, 397 F.3d 101, 103 (2nd Cir. 2005) (neither Booker nor Blakely apply

22  retroactively on collateral review).

23          Movant's conviction was final when his petition for writ of certiorari was denied on

24  March 3, 2003.  Johnson v. United States, 537 U.S. 1242 (2003).  Blakely was not decided

25  until more than a year later.  Because the rule announced in Blakely is not retroactive,

26  Movant cannot raise the claim on collateral review.  Accordingly, the court will recommend

27  that Ground Four be denied.

28

1  **IT IS THEREFORE RECOMMENDED:**

2       That the Motion to Vacate, Set Aside or Correct Sentence by a Person in Federal

3  Custody pursuant to 28 U.S.C. § 2255 (Doc. #1244) be **DENIED**;

4       This recommendation is not an order that is immediately appealable to the Ninth

5  Circuit Court of Appeals.  Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

6  Appellate Procedure, should not be filed until entry of the district court's judgment.  The

7  parties shall have ten days from the date of service of a copy of this recommendation within

8  which to file specific written objections with the Court.  <u>See</u>, 28 U.S.C. § 636(b)(1); Fed. R.

9  Civ. P. 6(a), 6(b) and 72.  Thereafter, the parties have ten days within which to file a

10 response to the objections.  Failure to timely file objections to the Magistrate Judge's Report

11 and Recommendation may result in the acceptance of the Report and Recommendation by

12 the district court without further review.  <u>See</u> <u>United States v. Reyna-Tapia</u>, 328 F.3d 1114,

13 1121 (9th Cir. 2003).  Failure to timely file objections to any factual determinations of the

14 Magistrate Judge will be considered a waiver of a party's right to appellate review of the

15 findings of fact in an order of judgement entered pursuant to the Magistrate Judge's

16 recommendation.  <u>See</u> Fed. R. Civ. P. 72.

17      DATED this 4th day of August, 2005.

18

19

20                                  Edward C. Voss
                                    United States Magistrate Judge

21

22

23

24

25

26

27

28